**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| Alexander T. Nehring,<br><br>Plaintiff,<br><br>v.<br><br>U.S. Bank N.A. *et al.*,<br><br>Defendants. | Civil No. 3:26-cv-01309 (VAB)<br><br>October 27, 2026 |

**RULING ON MOTION FOR LEAVE TO PROCEED *IN FORMA PAUPERIS* AND RECOMMENDED RULING ON 28 U.S.C. § 1915(e)(2) REVIEW**

## I. INTRODUCTION

The plaintiff, Alexander Nehring, lost a foreclosure case in the Connecticut Superior Court.[1] Years afterward, he filed this federal lawsuit, claiming that U.S. Bank National Association ("U.S. Bank"), the law firms that represented U.S. Bank, the appraisers who assessed the fair market value of the property, the notaries who notarized the appraisals, and some unnamed others all conspired to deprive him of his property.[2] He seeks various forms of monetary and injunctive relief, including a declaration that "any judgment, decree, or court order [that] was obtained through the use of the Eleven (11) Fraudulent Appraisals . . . is void, voidable, and of no legal effect, and an order vacating or setting aside the same[.]"[3] In other words, he asks this Court to overturn the judgment of the Connecticut Superior Court, and give him monetary damages for the allegedly fraudulent acts that led to the entry of that judgment.

---

1 *U.S. Bank National Association v. Nehring et al.*, No. DBD-CV13-6012343-S (Conn. Super. Ct.). Throughout this Recommended Ruling, I will refer to this case as the "State Case."

2 Amended Complaint, Docket No. 11.

3 Amended Complaint, Docket No. 11, at page 35.

When Mr. Nehring filed his federal complaint, he also filed an application for leave to proceed *in forma pauperis*, or "IFP".[4] When a plaintiff seeks permission to begin a lawsuit IFP – that is, without paying the filing fee – the court ordinarily conducts two inquiries. First, it reviews the plaintiff's financial affidavit and determines whether he is genuinely unable to pay the fee.[5] Second, to ensure that the plaintiff is not abusing the privilege of filing a free lawsuit, the court examines his complaint to determine whether it fails to properly invoke federal jurisdiction, "is frivolous[,]" or "fails to state a claim on which relief may be granted."[6] If the complaint does not support jurisdiction, or is frivolous or fails to state a claim, the court must dismiss the case.[7]

United States District Judge Victor A. Bolden referred this case to me, United States Magistrate Judge Thomas O. Farrish, to conduct these two inquiries.[8] I have thoroughly reviewed the Amended Complaint, the IFP motion, and the accompanying financial affidavit. In Section III below, I will grant Mr. Nehring's motion to proceed IFP, because he has adequately demonstrated that he is unable to pay the filing fee. But in Section IV, I will recommend that Mr. Nehring's complaint be dismissed. The Court does not have jurisdiction over some of his claims, and his remaining claims "fail to state a claim upon which relief may be granted." I recommend, however, that the dismissal be "without prejudice." If my recommendation were to be accepted, that would mean that Mr. Nehring could attempt to fix the defects identified in Section IV of this Recommended Ruling with another amended complaint.

---

4 Application to Proceed *In Forma Pauperis*, Docket No. 2.

5 28 U.S.C. § 1915(a).

6 28 U.S.C. §§ 1915(e)(2)(B)(i)-(ii).

7 28 U.S.C. §§ 1915(e)(2)(B)(i)-(ii).

8 Order of Referral, Docket No. 12.

## II. Background

The following facts are taken from Mr. Nehring's first Amended Complaint, which are assumed to be true for purposes of this Recommended Ruling,[9] and from the online dockets in the State Case[10] and Mr. Nehring's many unsuccessful bankruptcy cases.[11] In 2006, Mr. Nehring took out a $1,000,000 loan with Washington Mutual Bank, using his home as collateral.[12] A 2006 assessment from Equity Appraisal LLC valued the property at $1,660,000.[13] On May 2, 2013, U.S. Bank filed a complaint in the Danbury Superior Court, claiming to have succeeded to

---

9 *See, e.g., Staton v. Holzbach*, No. 3:20-cv-631 (SRU), 2020 WL 6119382, at *1 n. 4 (D. Conn. Oct. 16, 2020). At the earliest stage of a civil case, when the Court is considering only whether the complaint states a claim that is sufficient to move forward, the plaintiff's well-pleaded and non-conclusory factual allegations are assumed to be true. If Mr. Nehring's case were to proceed past this early stage, however, he would of course bear the burden to prove each of his allegations. In other words, Mr. Nehring should not conclude that, just because the Court is assuming his factual claims to be true in this Recommended Ruling, it will do so at later stages of the case.

Mr. Nehring filed his original complaint at Docket No. 1 on August 14, 2026, and he filed his first amended complaint at Docket No. 11 on August 17, 2026. He then filed a purported second amended complaint at Docket No. 13 on August 21, 2026. But Rule 15(a)(1) of the Federal Rules of Civil Procedure provides that a plaintiff may amend his complaint only once as a matter of right. Rule 15(a)(2) provides that, if he wishes to amend his complaint a second time, he must secure the defendant's consent or the Court's leave. Because Mr. Nehring did neither, the Court regards the first amended complaint at Docket No. 11 as the operative pleading.

10 *U.S. Bank National Association v. Nehring et al.*, No. DBD-CV13-6012343-S (Conn. Super. Ct.). Throughout this Recommended Ruling, I will refer to the docket in the State Case as the "State Court Docket." When reviewing a complaint for purposes of 28 U.S.C. § 1915, the Court may take "judicial notice" of all docket filings in a related state court case. *Bennett v. Career Resources, Inc.*, No. 3:19-cv-1006 (KAD) (SALM), 2019 WL 13272452, at *1 n.1 (D. Conn. July 1, 2019). To take "judicial notice" means to "accept[ ], for purposes of convenience and without requiring a party's proof . . . a well-known and indisputable fact[.]" Black's Law Dictionary 863-64 (8th ed. 2004).

11 *In re Nehring*, 5:15-bk-51029 (AJWS); *In re Nehring*, 5:17-bk-51098 (JAM); *In re Nehring*, 5:19-bk-50022 (JAM); *In re Nehring*, 5:20-bk-50012 (JAM); *In re Nehring*, 5:23-bk-50172 (JAM); *In re Nehring*, 3:23-cv-00490 (KAD).

12 Amended Complaint, Docket No. 11, at pages 5-6.

13 Amended Complaint, Docket No. 11, at page 6; Exhibit 12-1 to Amended Complaint, Docket No. 11-1, at page 145.

Washington Mutual's rights under the mortgage and seeking to foreclose on it.[14] A Hartford law firm, McCalla Raymer Leibert Pierce LLC, appeared on U.S. Bank's behalf. After an unsuccessful attempt at foreclosure mediation, U.S. Bank moved for a default judgment for failure to appear and failure to plead.[15] U.S. Bank included an appraisal from a real estate appraiser who assessed the fair market value of the property at $905,000.[16] The court entered a judgment of foreclosure by sale and set a sale date, which was extended to July 25, 2015 in response to motions by U.S. Bank.[17] Three days before the sale date, Mr. Nehring – who was then represented by counsel – filed a motion to open the judgment and delay the sale, "alleg[ing] that he was 'very close' to obtaining the capital needed to satisfy his debt to [U.S. Bank] . . . ."[18] Two days later, on the eve of the sale date, his motion was denied.[19] He filed for bankruptcy the same day,[20] triggering a stay of the foreclosure proceedings. On September 10, 2015, his bankruptcy case was dismissed for failure to file information.[21]

U.S. Bank continued its efforts to finalize its foreclosure of the property. Over the next five years, it filed several motions to open the judgment or reset the law days,[22] each accompanied

---

14 Complaint, State Court Docket, Entry No. 1 (May 2, 2013); *see also U.S. Bank National Association v. Nehring*, 232 Conn. App. 307, 309, *cert. denied*, 352 Conn. 911 (2025).

15 Motion for Default – Failure to Appear PB 17-20, State Court Docket, Entry No. 117 (Oct. 17, 2014); Motion for Default – Failure to Plead, State Court Docket, Entry No. 118 (Oct. 17, 2014).

16 Appraisal, State Court Docket, Entry No. 121 (Oct. 17, 2014); Exhibit 1 to Amended Complaint, Docket No. 11-1, at page 2.

17 Order, State Court Docket, Entry No. 120.05 (Nov. 3, 2014); Motion to Open Judgment and Extend the Sale Date, State Court Docket, Entry No. 130 (Mar. 13, 2015); Motion to Open Judgment and Extend the Sale Date, State Court Docket, Entry No. 132 (May 7, 2015).

18 *U.S. Bank National Association v. Nehring*, 232 Conn. App. 307, 310, *cert. denied*, 352 Conn. 911 (2025).

19 Order, State Court Docket, Entry No. 135 (July 24, 2015).

20 *In re Nehring*, 5:15-bk-51029 (AJWS).

21 *In re Nehring*, 5:15-bk-51029 (AJWS), Docket No. 14 (Sept. 10, 2015).

22 U.S. Bank first filed three motions to open the judgment. Motion to Open Judgment, State Court Docket, Entry No. 138 (Sept. 30, 2015); Motion to Open Judgment and Extend the Sale

by a new appraisal.[23] During this time, the case was referred to the Foreclosure Committee twice, and three additional appraisals were submitted in connection with those referrals.[24] Mr. Nehring, who was self-represented as of May 23, 2017,[25] was an active participant in the litigation, filing multiple motions to open the judgment. Every time those efforts failed and the date of sale or law day was imminent, he filed for bankruptcy and obtained a stay of the proceedings.[26] On June 19, 2020, Mr. Nehring's fifth bankruptcy petition was dismissed with prejudice, as the court concluded that the cases "were filed to stay proceedings in the State Court Foreclosure Action and not for a proper bankruptcy purpose."[27] He was barred from filing any bankruptcy cases for one year.[28]

---

Date, State Court Docket, Entry No. 153 (Feb. 8, 2017); Motion to Open Judgment, State Court Docket, Entry No. 170 (May 29, 2018). In October 2018, U.S. Bank moved to convert the foreclosure by sale to strict foreclosure, which the court granted. Motion to Open Judgment, State Court Docket, Entry No. 182 (Oct. 4, 2018); Judgment of Strict Foreclosure, State Court Docket, Entry No. 185 (Oct. 22, 2018). After that, U.S. Bank filed a motion to reset the law days. State Court Docket, Entry No. 193 (Sept. 17, 2019).

[23] Exhibits 2 & 3 to Amended Complaint, Docket No. 11-1, at pages 16, 30 (Jack Boyles twice appraising the property's fair market value at $903,000); Exhibit 6 to Amended Complaint, Docket No. 11-1 at page 62 (Richard Massa appraising fair market value at $885,000); Exhibit 8 to Amended Complaint, Docket No. 11-1, at page 90 (John Conner appraising fair market value at $775,000); Exhibit 9 to Amended Complaint, Docket No. 11-1, at page 103 (Susan Marra appraising fair market value at $670,000).

[24] Exhibits 4 & 5 to Amended Complaint, Docket No. 11-1, at pages 58, 60 (Sean Barsky twice appraising fair market value at $830,000); Exhibit 7 to Amended Complaint, Docket No. 11-1, at page 88 (Sean Barsky appraising fair market value at $820,000).

[25] *See U.S. Bank National Association v. Nehring*, 232 Conn. App. 307, 310, *cert. denied*, 352 Conn. 911 (2025).

[26] *In re Nehring*, 5:16-bk-51020 (JAM) (filed within two days of the sale date); *In re Nehring*, 5:17-bk-51098 (JAM) (filed within four days of the sale date); *In re Nehring*, 5:19-bk-50022 (JAM) (filed one day before law day); *In re Nehring*, 5:20-bk-50012 (JAM) (filed one day before law day).

[27] *In re Nehring,* 5:20-bk-50012 (JAM), Docket No. 39, at page 7.

[28] *In re Nehring,* 5:20-bk-50012 (JAM), Docket No. 39, at pages 8-9.

The case did not have any further movement until November 10, 2022, when U.S. Bank filed a motion to reset the law days, accompanied by a new appraisal.[29] On December 19, 2022, the court granted the motion and set new law days to commence on March 21, 2023.[30] On March 13, 2023, Mr. Nehring filed a motion to open, "titled 'Emergency Motion to Open, Vacate Judgment and Request an Evidentiary Hearing Based Upon Fraud on the Court.'"[31] He contended that U.S. Bank "brought its claim knowing that it was not the rightful holder of the note, and, in doing so, engaged in fraud upon the court, unconscionable conduct, and unfair trade practices."[32] The court set a hearing on his motion to open on March 29, 2023, but Mr. Nehring had already filed his sixth bankruptcy petition on March 20, 2023, which resulted in a stay.[33] His bankruptcy petition was dismissed on April 4, 2023 for failure to file missing documents.[34] He appealed the dismissal to the District Court, asserting that he had filed the bankruptcy petition to stop the foreclosure and eviction "dead in its tracks" due to U.S. Bank's allegedly fraudulent assignment,[35] but his appeal did not revive the stay on the state court proceedings.[36] On July 28, 2023, U.S. Bank filed another motion to open the judgment, along with a new appraisal – the eleventh and final appraisal filed in this case.[37] Mr. Nehring objected to the motion.

---

29 Motion to Reset Law Days After Filing of a Bankruptcy Petition, State Court Docket, Entry No. 209 (Nov. 10, 2022); Exhibit 10 to Amended Complaint, Docket No. 11-1, at 116 (Susan Marra appraising fair market value at $815,000).

30 Order, State Court Docket, Entry No. 216.01 (Dec. 19, 2022).

31 *U.S. Bank National Association v. Nehring*, 232 Conn. App. 307, 311, *cert. denied*, 352 Conn. 911 (2025).

32 *U.S. Bank National Association v. Nehring*, 232 Conn. App. 307, 311, *cert. denied*, 352 Conn. 911 (2025).

33 *In re Nehring*, 5:23-bk-50172 (JAM).

34 *In re Nehring*, 5:23-bk-50172 (JAM), Docket No. 11 (Apr. 4, 2023).

35 *In re Nehring*, 3:23-cv-00490 (KAD), Docket No. 1 (Apr. 18, 2023).

36 The District Court ultimately dismissed this appeal for failure to prosecute with reasonable diligence. *In re Nehring*, 3:23-cv-00490 (KAD), slip op., Docket No. 23 (Jan. 26, 2024).

37 Exhibit 11 to Amended Complaint, ECF No. 11-1, at page 130 (Susan Marra appraising fair market value at $900,000).

The state court held a hearing on Mr. Nehring's motion to open the judgment, and he argued that the assignment of the note was the product of fraud.[38] The court overruled his objection, concluding that it would not entertain evidence that the judgment was invalid because it would be "a collateral attack on that judgment that's already been entered, not once but on multiple occasions, over many years . . . ."[39] The court then rendered a judgment of strict foreclosure and set new law days.[40]

Mr. Nehring did not then appeal the judgment, but instead filed an emergency motion to vacate it.[41] The court denied the motion, concluding that he had not shown "good cause pursuant to General Statutes § 49-15 . . . and clear and unequivocal evidence of fraud," and set new law days for December 5, 2023.[42]

Mr. Nehring then appealed the decision to the Connecticut Appellate Court,[43] which ultimately dismissed his appeal as moot because "title vested absolutely in [U.S. Bank] on December 5, 2023."[44] The Connecticut Supreme Court denied certification.[45]

---

38 *U.S. Bank National Association v. Nehring*, 232 Conn. App. 307, 311, *cert. denied*, 352 Conn. 911 (2025).

39 *U.S. Bank National Association v. Nehring*, 232 Conn. App. 307, 313-14, *cert. denied*, 352 Conn. 911 (2025).

40 Order, State Court Docket, Entry No. 227.02 (Sept. 11, 2023).

41 Motion to Open Judgment, State Court Docket, Entry No. 237 (Oct. 11, 2023); Amended Emergency Motion to Vacate Judgment, State Court Docket, Entry No. 237.01 (Oct. 23, 2023).

42 *U.S. Bank National Association v. Nehring*, 232 Conn. App. 307, 313-14, *cert. denied*, 352 Conn. 911 (2025).

43 Mr. Nehring submitted three appeals to the Appellate Court, two of which were dismissed for failure to file necessary documentation. His third appeal was decided on the merits. Appellate Court Decision Appeal Dismissed, State Court Docket, Entry No. 247 (Mar. 19, 2024); Appellate Court Decision Appeal Dismissed, State Court Docket, Entry No. 250 (July 18, 2024).

44 *U.S. Bank National Association v. Nehring*, 232 Conn. App. 307, 316, *cert. denied*, 352 Conn. 911 (2025).

45 *U.S. Bank National Association v. Nehring*, 352 Conn. 911 (2025)

Since the Supreme Court denied review, Mr. Nehring has filed two motions to reargue or reconsider,[46] two motions to dismiss,[47] and six motions to open the judgment and/or vacate the order.[48] In his Amended Complaint in this case, he states that on June 2, 2026, Judge Daniel J. Fox denied his motion to vacate the judgment as moot, because title had vested in U.S. Bank after passage of the law day.[49]

On August 14, 2026, Mr. Nehring filed this federal lawsuit against U.S. Bank, the two law firms that represented U.S. Bank in the state court proceedings, the five real estate appraisers who prepared the appraisals, the five notaries who notarized those same appraisals, and John Does 1-20.[50] He asserts that the defendants all participated in a "systematic and deliberate scheme" to defraud him of his property, by allegedly fabricating "eleven (11) false real property appraisals, the submission of those appraisals to courts and financial institutions, and the use of mail, wire, and financial communications in furtherance thereof."[51] He asserts that each of these appraisals are fraudulent and forged because the specific details of the property were inconsistent with the details of an appraisal that was performed in 2006.[52] He claims to have discovered the falsity of these appraisals only in April 2026.[53] He asserts that the defendants violated the Racketeer

[46] Motion for Reconsideration En Banc, State Court Docket, Entry No. 255 (June 30, 2025); Motion for Reconsider, State Court Docket, Entry No. 257 (Sept. 30, 2025).

[47] Motion to Dismiss PB 10-30, State Court Docket, Entry No. 278 (Jan. 30, 2026); Motion to Dismiss PB 10-30, State Court Docket, Entry No. 280 (Feb. 2, 2026).

[48] Motion to Open Judgment, State Court Docket, Entry No. 282 (Feb. 13, 2026); Amended Motion to Open Judgment Due to New Evidence of Fraud on the Court, State Court Docket, Entry No. 288 (Mar. 13, 2026); Motion to Open Judgment, State Court Docket, Entry No. 290 (Mar. 16, 2026); Motion to Vacate Order, State Court Docket, Entry No. 293 (Mar. 27, 2023); Amended Motion to Vacate Judgment for Fraud on the Court, State Court Docket, Entry No. 295 (Mar. 30, 2026); Motion to Open Judgment, State Court Docket, Entry No. 298 (Apr. 24, 2026).

[49] Amended Complaint, Docket No. 11, at page 12, footnote ten.

[50] Complaint, Docket No 1; Amended Complaint, Docket No. 11, at paras. 7-12.

[51] Amended Complaint, Docket No. 11, at paras. 1, 13.

[52] Amended Complaint, Docket No. 11, at pages 5-6 & paras. 19-21.

[53] Amended Complaint, Docket No. 11, at para. 13.

Influenced and Corrupt Organizations Act ("RICO") by participating in a pattern of racketeering activity, that the defendants are guilty of common law fraud and civil conspiracy, and that U.S. Bank and the law firms violated the Connecticut Unfair Trade Practices Act ("CUTPA"). [54]

In his prayer for relief, Mr. Nehring expressly asks this Court to overturn the Superior Court judgment. He asks that, "[t]o the extent any judgment, decree, or court order was obtained through the use of the Eleven (11) Fraudulent Appraisals," the Court declare "that such judgment, decree, or order is void, voidable, and of no legal effect, and an order vacating or setting aside the same[.]"[55] He also seeks compensatory damages, punitive damages, treble damages, and attorney's fees and costs.[56]

In Section IV below, I will address whether a complaint making these claims and seeking this relief should move forward or be dismissed. But first, I will consider in Section III whether Mr. Nehring is entitled to proceed IFP.

## III. The First Inquiry: IFP Status

Ordinarily when a plaintiff files a complaint in federal court, he must pay fees totaling $405.00, consisting of a $350.00 filing fee and a $55.00 administrative fee.[57] District courts may nevertheless authorize commencement of an action "without prepayment of fees . . . by a person who submits an affidavit that includes a statement . . . that the person is unable to pay such fees."[58]

---

54 Amended Complaint, Docket No. 11, at paras. 34-62.

55 Amended Complaint, Docket No. 11, at page 35.

56 Amended Complaint, Docket No. 11, at pages 34-35.

57 28 U.S.C. § 1914.

58 28 U.S.C. § 1915(a)(1); *see also Coleman v. Tollefson,* 575 U.S. 532, 534 (2015) (stating that plaintiffs who qualify for IFP status "may commence a civil action without prepaying fees or paying certain expenses").

When a court allows a plaintiff to proceed this way, he is said to be proceeding "*in forma pauperis*," which is a Latin phrase meaning "in the manner of a pauper" or poor person.[59]

To qualify as "unable to pay," the plaintiff does not have to demonstrate absolute destitution, but he does need to show that "paying such fees would constitute a serious hardship."[60] The United States Supreme Court has said that a plaintiff makes a "sufficient" showing of inability to pay when his application demonstrates that he "cannot because of his poverty pay or give security for the costs and still be able to provide himself and [his] dependents with the necessities of life."[61] In other words, the plaintiff does not have to show that he is without a penny to his name, but he does need to show that paying the $405.00 fee would interfere with his ability to support himself and his family. The idea behind this rule is that "no party must be made to choose between abandoning a potentially meritorious claim or foregoing the necessities of life."[62]

In this case, Mr. Nehring's IFP affidavit states that he receives $1,365.00 per month in Social Security income, and $418.00 per month from an IBM pension.[63] His expenses total $1,725.00 per month, meaning he only has $58.00 per month left over.[64] In terms of assets, he owns a 2009 Toyota Prius which he estimates is worth $550.00, and he has $185.00 of cash on hand.[65]

---

59 *Anderson v. Davis*, No. 3:26-cv-400 (SVN) (TOF), 2026 WL 2268253, at *2 n.23 (D. Conn. Aug. 6, 2026), *report and recommendation approved and adopted*, slip op. (D. Conn. Aug. 31, 2026) (quoting Black's Law Dictionary 794 (8th ed. 2004)).
60 *Fiebelkorn v. United States*, 77 Fed. Cl. 59, 62 (2007).
61 *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 339 (1948).
62 *Potnick v. Eastern State Hospital*, 701 F.2d 243, 244 (2d Cir. 1983) (per curiam).
63 Application to Proceed *In Forma Pauperis*, Docket No. 2, at page 2.
64 Application to Proceed *In Forma Pauperis*, Docket No. 2, at page 4.
65 Application to Proceed *In Forma Pauperis*, Docket No. 2, at page 4.

Mr. Nehring does claim to own a house with an estimated value of $1,660,000, but in this case, the Court will not consider that claim in the IFP analysis.[66] Ordinarily, courts consider "equity in real estate" when deciding whether plaintiffs can pay the filing fee.[67] Indeed,"[c]ourts have found that as little as $10,000 in home equity can preclude a plaintiff from obtaining IFP status."[68] But this assumes that the home equity is an asset that a plaintiff can readily draw on as collateral, such as through a home equity line of credit. Here, it seems clear that Mr. Nehring cannot draw on the equity he claims. The Court notes that, according to the Town of Ridgefield's records, U.S. Bank filed a certificate of foreclosure on the property on June 9, 2026, and title to the premises became absolute in U.S. Bank on that date.[69] Although Mr. Nehring contests the decisions of the state courts, and therefore claims to own the equity in the home, he did not legally own the property at the time he filled his motion to proceed IFP. Accordingly, the Court will not consider his claimed equity in the IFP analysis.

In summary, Mr. Nehring does not own significant assets, and his monthly income only marginally exceeds his expenses. Because his application establishes that he is "unable to pay" $405.00 in filing and administrative fees, he will be granted leave to proceed IFP.

## IV. The Second Inquiry: Review of the Complaint

### A. Review of Complaint Under 28 U.S.C. § 1915(e)(2)

The same statute that authorizes courts to grant IFP status to qualifying plaintiffs also directs the courts to review the plaintiffs' complaints to ensure that they are not abusing that right. Because IFP plaintiffs lack "an economic incentive to refrain from filing frivolous, malicious or

---

66 Application to Proceed *In Forma Pauperis*, Docket No. 2, at page 3.

67 *E.g., Murphy v. PHH Mortgage Servicers*, No. 3:23-cv-01552 (KAD) (TOF), 2024 WL 2864218, at *2 (D. Conn. Jan. 23, 2024).

68 *Murphy v. PHH Mortgage Servicers*, No. 3:23-cv-01552 (KAD) (TOF), 2024 WL 2864218, at *2 (D. Conn. Jan. 23, 2024).

69 Available at https://searchiqs.com/ctrid/.

repetitive lawsuits,"[70] "the statute instructs the Court to review their complaints and dismiss certain types of abusive or facially unmeritorious claims."[71] Specifically, 28 U.S.C. § 1915(e)(2)(B) instructs federal district courts to dismiss IFP complaints if any of three circumstances apply. First, a district court "shall dismiss the case at any time if the court determines that . . . the action . . . is frivolous or malicious."[72] An action is "frivolous" for purposes of Section 1915(e)(2)(B) if it "has no arguable basis in law or fact" or is "based on an indisputably meritless legal theory."[73] Second, the court must dismiss a complaint that "fails to state a claim on which relief may be granted."[74] Third, "the court shall dismiss the case" if it finds that the complaint "seeks monetary relief against a defendant who is immune from such relief."[75]

The second circumstance is most relevant here, so I will discuss it in more detail. To "state a claim on which relief may be granted," the plaintiff's complaint "must include enough factual allegations to add up to a legally meritorious claim, assuming that he could prove them."[76] Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendant fair notice of the claims.[77] Conclusory allegations are insufficient.[78] Put differently,

---

70 *Neitzke v. Williams*, 490 U.S. 319, 324 (1989).

71 *Murphy v. PHH Mortgage Servicers*, No. 3:23-cv-1552 (KAD) (TOF), 2024 WL 2864218, at *2 (D. Conn. Jan. 23, 2024), *report and recommendation accepted and adopted*, slip op. (D. Conn. May 15, 2024).

72 28 U.S.C. § 1915(e)(2)(B)(i).

73 *Montero v. Travis*, 171 F.3d 757, 759 (2d Cir. 1999) (per curiam).

74 28 U.S.C. § 1915(e)(2)(B)(ii).

75 28 U.S.C. § 1915(e)(2)(B)(iii).

76 *Carrier v. DelGrosso*, No. 3:25-cv-1808 (VAB) (TOF), 2025 WL 3458049, at *3 (D. Conn. Dec. 2, 2025), *report and recommendation adopted*, slip op. (D. Conn. Jan. 6, 2026).

77 *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

78 *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A 'conclusory' allegation is one that 'expresses a factual inference without stating the underlying facts on which the inference is based.'" *Reid v. Lokay*, No. 3:25-cv-997 (KAD) (TOF), 2025 WL 3521362, at *3 (D. Conn. Dec. 9, 2025), *report and recommendation accepted and adopted*, slip op. (D. Conn. Jan. 5, 2026) (quoting Black's Law Dictionary 308 (8th ed. 2004)). For example, "the defendant violated the plaintiff's rights" is a conclusory allegation because it states a legal conclusion – rights were

a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."[79] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[80]

These and other pleading rules are applied liberally in favor of *pro se* plaintiffs like Mr. Nehring – that is, people who bring lawsuits by themselves, without a lawyer. "Since most *pro se* plaintiffs lack familiarity with the formalities of pleading requirements," courts must "construe *pro se* complaints liberally, applying a more flexible standard to evaluate their sufficiency than [they] would when reviewing a complaint submitted by counsel."[81] In other words, courts interpret *pro se* complaints "to raise the strongest arguments they suggest."[82]

"Still, even a *pro se* plaintiff must plead a plausible claim."[83] "Although courts still have an obligation to liberally construe a *pro se* complaint, the complaint must include sufficient factual allegations to meet the standard of facial plausibility."[84] And while "courts are obligated to draw the most favorable inferences that a *pro se* plaintiff's complaint supports, they cannot invent factual allegations that he has not pled."[85]

Before considering whether a complaint is subject to dismissal for one of the three reasons outlined in 28 U.S.C. § 1915(e)(2)(B), however, the Court must first satisfy itself that it has

---

violated – without explaining the facts that support that conclusion, or how those rights were violated.

79 *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

80 *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 556 (2007)).

81 *Lerman v. Board of Elections*, 232 F.3d 135, 139-40 (2d Cir. 2000).

82 *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006) (internal quotation marks omitted).

83 *Reynolds-El v. Strackbein*, No. 3:25-cv-951 (KAD) (TOF), 2025 WL 3470483, at *4 (D. Conn. Dec. 3, 2025), *report and recommendation adopted*, slip op. (D. Conn. Jan. 6, 2026).

84 *Vega v. University of Connecticut Medical Center*, No. 3:11-cv-1864 (AVC), 2012 WL 1825381, at *1 (D. Conn. May 16, 2012).

85 *Braswell v. Pelchat*, No. 3:20-cv-1428 (AVC) (TOF), 2021 WL 11580927, at *2 (D. Con. Feb. 12, 2021), *report and recommendation approved*, slip op. (D. Conn. Apr. 6, 2021).

jurisdiction over the case. The liberal construction due to *pro se* pleadings "does not stretch so far as to cause a court to hear a case that is outside its jurisdiction,"[86] and "[w]here jurisdiction is lacking . . . dismissal is mandatory."[87] I will therefore first address whether the Court has jurisdiction over Mr. Nehring's claims, and then I will consider whether any should be dismissed under 28 U.S.C. § 1915(e)(2)(B).

### B. Subject Matter Jurisdiction

Jurisdiction is "[a] court's power to decide a case."[88] It is a term that encompasses several concepts, including "subject matter jurisdiction" and "personal jurisdiction." When a court asks itself whether it has "subject matter jurisdiction" over a case, it is asking whether it has the power to hear the type of claim that the plaintiff has brought.[89] By contrast, when a court considers whether "personal jurisdiction" exists, it asks itself whether it has power over the parties.[90]

Like all federal courts, this Court is a court of "limited" subject matter jurisdiction, meaning that it cannot hear just any case.[91] In this respect, the federal courts are unlike the Connecticut state courts. The Connecticut Superior Court is a "court of general jurisdiction," meaning that it can decide a very wide array of cases.[92] But federal courts "possess only that power authorized by Constitution and statute."[93]

Leaving aside some other case types that are not relevant here, Congress has authorized the federal district courts to hear and decide two principal types of claims. First, federal courts may

---

86 *Hamm v. Baio*, No. 3:22-cv-401 (OAW) (TOF), 2023 WL 2867070, at *2 (D. Conn. Jan. 10, 2023), *report and recommendation adopted*, slip op. (D. Conn. Feb. 27, 2023).

87 *Yong Qin Luo v. Mikel*, 625 F.3d 772, 775 (2d Cir. 2010).

88 Black's Law Dictionary 867 (8th ed. 2004).

89 Black's Law Dictionary 870 (8th ed. 2004).

90 Black's Law Dictionary 870 (8th ed. 2004).

91 *Kokkonen v. Guardian Life Insurance Co.*, 511 U.S. 375, 377 (1994).

92 *State v. Butler*, 348 Conn. 51, 76 (2023) (D'Auria, J., concurring).

93 *Kokkonen v. Guardian Life Insurance Co.*, 511 U.S. 375, 377 (1994).

hear cases that "aris[e] under the Constitution, laws, or treaties of the United States."[94] This is known as the "federal question" form of subject matter jurisdiction, because such a case raises questions about compliance with federal law. Second, federal courts may decide cases between "citizens of different States" "where the matter in controversy exceeds the sum or value of $75,000."[95] This is known as "diversity" jurisdiction, because when the plaintiff and the defendant are citizens of different states, their citizenship is said to be "diverse" from each other.

Importantly for this case, federal district courts do not have jurisdiction over "cases that are, in substance, appeals from judgments of a state court."[96] This principle is called the "*Rooker-Feldman* doctrine," because it is based on two United States Supreme Court cases: *Rooker v. Fidelity Trust Co.*[97] and *District of Columbia Court of Appeals v. Feldman.*[98] Justice Clarence Thomas recently explained the *Rooker-Feldman* principle in simple terms:

> When you lose in trial court, you go to an appeals court. . . . [P]arties who lose in state trial court do not get to appeal to a federal trial court. Instead, they may take their appeal to a state appeals court and, if a federal statute allows, ultimately seek review in [the United States Supreme Court].[99]

This principle arises out of the fact that Article III of the United States Constitution confers "appellate jurisdiction" solely on the United States Supreme Court, not on federal district courts like this Court.[100]

---

94 28 U.S.C. § 1331.

95 28 U.S.C. § 1332.

96 *Ortiz v. Tinnerello*, No. 3:22-cv-1318 (AWT) (TOF), 2023 WL 11842871, at *6 (D. Conn. Mar. 22, 2023), *report and recommendation accepted*, slip op. (D. Conn. July 26, 2023).

97 *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923).

98 *District of Columbia Court of Appeals v. Feldman*, 46 U.S. 462 (1983).

99 *T.M. v. University of Maryland Medical System Corp.*, 608 U.S. 668, 689 (2026) (Thomas, J., concurring).

100 *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416 (1923) ("The jurisdiction possessed by the District Courts is strictly original."); *Lewis v. DOC's U.S. State of Connecticut, Inc.*, No. 3:23-mc-116 (VDO) (TOF), 2024 WL 5088764, at *4 (D. Conn. Mar. 20, 2024) (explaining the differences between "original" and "appellate" jurisdiction, and why the United States District Court for the District of Connecticut possesses only "original" jurisdiction).

As noted, the *Rooker-Feldman* doctrine only applies when the plaintiff's claim is essentially an appeal from a state court judgment. As the Supreme Court has explained, "[t]he *Rooker–Feldman* doctrine . . . is confined to cases of the kind from which it acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the federal district court proceedings commenced and inviting district court review and rejection of those judgments."[101] To determine whether a plaintiff's federal complaint invokes the *Rooker-Feldman* principle, courts in the Second Circuit examine four factors: (1) whether the plaintiff lost in state court; (2) whether he is "complain[ing] of injuries caused by [a] state-court judgment," (3) whether he is "invit[ing] district court review and rejection" of the state court judgment, and (4) whether the state court judgment was rendered before the plaintiff brought his claim in federal court.[102] To be sure, the scope of the *Rooker-Feldman* doctrine is "narrow."[103] But when these four factors apply, a federal district court lacks jurisdiction over the case and dismissal is required.[104]

In this case, all four factors clearly apply to Mr. Nehring's central claims. First, he lost in state court when Judge Shaban entered a judgment of strict foreclosure in U.S. Bank's favor.[105] A state foreclosure judgment is final under Connecticut law "once the trial court has determined liability and set forth the essential components of a foreclosure judgment, such as the amount of

---

101 *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 284 (2005).

102 *Hoblock v. Albany County Board of Elections*, 422 F.3d 77, 85 (2d Cir. 2005), *abrogated on other grounds by T.M. v. University of Maryland Medical System Corp.*, 608 U.S. 668 (2026).

103 *T.M. v. University of Maryland Medical System Corp.*, 608 U.S. 668, 672 (2026).

104 *Modikhan v. BAC Home Loan Servicing LP*, No. 25-cv-4658 (EK) (HAM), 2026 WL 1802902, at *2 (E.D.N.Y. June 23, 2026) (applying four-factor test from *Hoblock*, even after one of *Hoblock's* other holdings was abrogated by *T.M.*, and dismissing case because "the *Rooker-Feldman* doctrine . . . bars the Court from reviewing the state court's eviction orders").

105 Order Regarding Motion to Open Judgment, State Court Docket, Entry No. 227.02 (Sept. 11, 2023). Judge Fox later entered an order that extended the law days on November 13. Order, State Court Docket, Entry No. 237.03 (Nov. 13, 2023).

the debt owed and whether a foreclosure should be strict or by sale[,]"[106] and a final judgment with these attributes entered in the State Case on September 11, 2023.[107] Afterward, the Connecticut Appellate Court found that "title vested absolutely in [U.S. Bank] on December 5, 2023[,]"[108] and the Connecticut Supreme Court denied certification.[109] Second, Mr. Nehring's complaint plainly complains of injuries caused by the judgment. He explicitly impugns the state court judgment, asserting that he "suffered injury to his livelihood and property," including the "[t]hreatened and actual loss of the Subject Property title through fraudulently obtained judicial proceedings."[110] Third, he expressly invited this Court to review and reject the state court judgment when he requested a declaration that "any judgment, decree, or court order [that was] was obtained through the use of the Eleven (11) Fraudulent Appraisals . . . is void, voidable, and of no legal effect, and an order vacating or setting aside the same[.]"[111] Fourth and finally, he lost in state court on September 11, 2023,[112] but he did not start this federal court action until August 14, 2026.[113]

Because all four *Hoblock* factors apply, this Court lacks jurisdiction over Mr. Nehring's claims to the extent that he either seeks relief from the state court foreclosure judgment or seeks

---

106 *Mase v. Riverview Realty Associates, LLC*, 208 Conn. App. 719, 729 (2021).

107 Order Regarding Motion to Open Judgment, State Court Docket, Entry No. 227.02 (Sept. 11, 2023).

108 *U.S. Bank National Association v. Nehring*, 232 Conn. App. 307, 316, *cert. denied*, 352 Conn. 911 (2025).

109 *U.S. Bank National Association v. Nehring*, 352 Conn. 911 (2025).

110 Amended Complaint, Docket No. 11, at para. 25. *See Smith v. Bendett & McHugh, P.C.*, No. 3:22-cv-239 (JAM), 2023 WL 372784, at *4 (D. Conn. Jan. 23, 2023) (holding that second *Hoblock* factor was satisfied where the plaintiff "explicitly impugn[ed] the state court foreclosure proceedings and [sought] relief from the state court foreclosure judgment").

111 Amended Complaint, Docket No. 11, at page 35.

112 Order Regarding Motion to Open Judgment, State Court Docket, Entry No. 227.02 (Sept. 11, 2023).

113 *See* Complaint, Docket No. 1.

to establish a fact in this litigation that is inconsistent with and would invalidate the state court foreclosure judgment.[114]

### C. Failure to State a Claim

#### *1. RICO Claims*

Once a federal court determines that it lacks jurisdiction over the subject matter of a case, the analysis usually stops there.[115] This is because "dismissal is mandatory" when subject matter jurisdiction is lacking,[116] thus obviating any need to reach the merits of the plaintiff's claims.[117] In this case, however, I will provide the following analysis of Mr. Nehring's claims, for Judge Bolden's consideration in the event that he disagrees with my jurisdictional analysis.[118]

Mr. Nehring asserts five causes of action against the defendants, the first two of which arise out of the RICO statute.[119] In his first claim, he alleges violations of 18 U.S.C. § 1962(c), which makes it "unlawful for any person employed by or associated with any enterprise . . . to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity[.]"[120] In order to state a claim under section 1962(c), "a plaintiff must allege (1) conduct, (2) of an enterprise, (3) through a pattern (4) of racketeering activity, as well as injury

---

114 *Smith v. Bendett & McHugh, P.C.*, No. 3:22-cv-239 (JAM), 2023 WL 372784, at *5 (D. Conn. Jan. 23, 2023).

115 *Progressive Casualty Insurance Co. v. Vargas*, No. 3:23-cv-1370 (SVN) (TOF), 2024 WL 4163496, at *11 (D. Conn. Sept. 11, 2024) (citing cases).

116 *Manway Construction Co. v. Housing Authority of Hartford*, 711 F.2d 501, 503 (2d Cir. 1983).

117 *See Weiss Acquisition, LLC v. Patel*, No. 3:12-cv-1819 (CSH), 2013 WL 45885, at *2 (D. Conn. Jan. 3, 2013).

118 I note that, while this Recommended Ruling was being drafted, Judge Bolden issued a decision on Mr. Nehring's motion for a temporary restraining order and preliminary injunction. *Nehring v. U.S. Bank National Association*, No. 3:26-cv-1309 (VAB), slip op., Doc. No. 21 (D. Conn. Oct. 19, 2019). In that decision, Judge Bolden concluded that Mr. Nehring's request for injunctive relief was barred by the *Rooker-Feldman* doctrine.

119 Amended Complaint, Docket No. 11, at pages 30-32 (alleging violations of 18 U.S.C. §§ 1962(c) and -1962(d)).

120 18 U.S.C.A. § 1962(c).

to business or property as a result of the RICO violation."[121] In his second claim, he alleges violations of 18 U.S.C. § 1962(d), which makes it "unlawful for any person to conspire to violate" subsection (c). Thus, to establish a RICO conspiracy in violation of section 1962(d), a plaintiff must show that the defendant agreed with at least one other person or entity to commit a substantive RICO offense.[122]

Mr. Nehring's RICO claims are insufficiently pled, for several reasons. First, he has not alleged facts sufficient to establish the existence of a RICO "enterprise." A RICO enterprise does not need to be a formal group, but the persons or entities[123] involved must be "associated together for a common purpose of engaging in a course of conduct" so as to constitute a "continuing unit."[124] "[C]onclusory naming of a string of entities does not adequately allege an enterprise."[125] When a plaintiff alleges an association-in-act enterprise, as Mr. Nehring has attempted to do here,[126] the enterprise "must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose."[127]

In this case, Mr. Nehring fails to allege a shared purpose, except perhaps in conclusory terms that do not get even a *pro se* plaintiff past initial review under Section 1915(e)(2). He claims

---

121 *Lundy v. Catholic Health System of Long Island Inc.*, 711 F.3d 106, 119 (2d Cir. 2013).

122 *See Crawford v. Franklin Credit Management. Corp.*, 758 F.3d 473, 487 (2d Cir. 2014).

123 When a corporate entity is named as a defendant, the complaint must distinguish between the RICO "person" and the RICO "enterprise." "[A] corporate entity may not be both the RICO person and the RICO enterprise under section 1962(c). This does not foreclose the possibility of a corporate entity being held liable as a defendant under section 1962(c) where it associates with others to form an enterprise that is sufficiently distinct from itself." *Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*, 30 F.3d 339, 344 (2d Cir. 1994). In other words, a single corporate entity will not be considered an enterprise simply because it is a formal group itself.

124 *United States v. Turkette*, 452 U.S. 576, 583 (1981).

125 *First Capital Asset Management, Inc. v. Satinwood, Inc.*, 385 F.3d 159, 175 (2d Cir. 2004).

126 Amended Complaint, Docket No. 11, at para. 35.

127 *Boyle v. United States*, 556 U.S. 938, 946 (2009).

that the defendants had the purpose of "[o]btain[ing] fraudulent judicial relief against Plaintiff through systematic false appraisals and judicial fraud to secure a strict foreclosure legal case."[128] But he fails to allege specifics as to this shared purpose, such as allegations that each defendant benefited in some way from the enterprise, why the defendants would share the goal, or any specific factual allegations about the intent of any individual defendant.[129]

Mr. Nehring also fails to sufficiently allege the "relationship" prong of a RICO enterprise. "[R]elationships among those associated with the enterprise" are essential to a RICO association-in-fact enterprise.[130] Mr. Nehring alleges that the defendants had "continuity of structure and personnel sufficient to constitute an ongoing organization," but his only support for this claim seems to be that each of the defendants participated in the legal proceedings to some extent – as parties, counsel, appraisers, or notaries.[131] He has failed to allege what the law firms, appraisers, or notaries stood to gain in joining a fraud by U.S. Bank—nor, in some cases, how they went about doing so. For example, one of the defendant appraisers was appointed by the *court* for the foreclosure proceeding,[132] and Mr. Nehring does not explain how or why that appraiser would be associated with any other defendant in the case.

In addition, the Amended Complaint does not sufficiently allege an enterprise that is "separate and apart from the pattern of activity in which it engages."[133] The only alleged

---

[128] Amended Complaint, Docket No. 11, at para. 28.

[129] *See D. Penguin Brothers. v. City National Bank*, 587 F. App'x 663, 667-68 (2d Cir. 2014) (summary order) (finding that the plaintiff failed to allege a plausible common purpose based on similar omissions).

[130] *Boyle v. United States*, 556 U.S. 938, 946 (2009).

[131] Amended Complaint, Docket No. 11, at paras. 27, 28.

[132] Exhibits 4 & 5 to Amended Complaint, Docket No. 11-1, at pages 58, 60 (Sean Barsky twice appraising fair market value at $830,000); Exhibit 7 to Amended Complaint, Docket No. 11-1, at page 88 (Sean Barsky appraising fair market value at $820,000).

[133] *United States v. Turkette*, 452 U.S. 576, 583 (1981).

relationship between the defendants is to obtain "fraudulent judicial relief against Plaintiff through systematic false appraisals and judicial fraud to secure a strict foreclosure legal case."[134] Even if taken as true, this would establish only that the defendants engaged in a pattern of activity. But the Supreme Court has made clear that an "enterprise" and a "pattern of racketeering activity" are different things, even if "the proof used to establish these separate elements may in particular cases coalesce."[135] In other words, a group of people will not necessarily be considered a RICO "enterprise" simply because they all allegedly participated in the same racketeering activity. An enterprise "is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit,"[136] and Mr. Nehring's Amended Complaint contains no non-conclusory allegations that would support such a claim.

A RICO plaintiff must also adequately plead a pattern of "racketeering activity." "'Racketeering activity' is defined to include any 'act' indictable under various specified federal statutes[.]"[137] Mr. Nehring alleges mail fraud, wire fraud, and bank fraud.[138] Although each of these offenses are predicate acts which can qualify as racketeering activity,[139] the factual allegations are insufficient.

First, the "predicate acts" alleged by Mr. Nehring are the submission of allegedly fraudulent appraisals to the Danbury Superior Court.[140] In *Kim v. Kimm*, the Second Circuit Court

---

134 Amended Complaint, Docket No. 11, at paras. 27, 28.

135 *United States v. Turkette*, 452 U.S. 576, 583 (1981); *see also Goodman by Goodman v. Bremby*, No. 3:16-cv-00665 (MPS), 2017 WL 4169427, at *9 (D. Conn. Sept. 20, 2017) (concluding that the plaintiff failed to allege the existence of an enterprise when "[t]he predicate acts are the machinations undertaken by the defendants" to steal from the plaintiff, "and the 'enterprise' is simply the group of defendants who engaged in those machinations").

136 *United States v. Turkette*, 452 U.S. 576, 583 (1981).

137 *Kim v. Kimm*, 884 F.3d 98, 103 (2d Cir. 2018)

138 Amended Complaint, Docket No. 11, at para. 2.

139 18 U.S.C. § 1961(1); *see* 18 U.S.C. §§ 1341, 1343, 1344.

140 Amended Complaint, Docket No. 11, at para. 17.

of Appeals held that "allegations of frivolous, fraudulent, or baseless litigation activities – without more – cannot constitute a RICO predicate act."[141] In that case, the plaintiff had claimed that the defendant filed "false legal documents" that were "intended to mislead the district court and therefore were predicate acts of obstruction of justice, mail fraud, and wire fraud that constituted a pattern of racketeering activity."[142] The Court of Appeals concluded that the filing of allegedly fraudulent documents in a single lawsuit could not be constitute a "viable RICO predicate act."[143] Here, too, Mr. Nehring's claims are based solely on litigation activity during a single lawsuit before the Danbury Superior Court.

Second, even if the "predicate acts" were not litigation activity, Mr. Nehring fails to state a claim under the wire, mail, or bank fraud statutes. An essential element of wire and mail fraud is a "scheme or artifice to defraud," and it requires "proof that defendants possessed a fraudulent intent."[144] Therefore, Mr. Nehring must meet the heightened pleading standard of Fed. R. Civ. P. 9(b), which requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."[145] Under this standard, "[i]n addition to alleging the particular details of a fraud, the plaintiff[ ] must allege facts that give rise to a *strong* inference of fraudulent intent[.]"[146] "The requisite 'strong inference' of fraud may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by

---

141 *Kim v. Kimm*, 884 F.3d 98, 104 (2d Cir. 2018).
142 *Kim v. Kimm*, 884 F.3d 98, 101 (2d Cir. 2018).
143 *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018).
144 *United States v. Starr*, 816 F.2d 94, 98 (2d Cir. 1987).
145 Fed. R. Civ. P. 9(b).
146 *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 179 (2d Cir. 2004) (emphasis in original).

alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness."[147]

Courts apply Rule 9(b)'s heightened pleading standard even when a plaintiff is proceeding *pro se*.[148] In *El-Hajj-Bey v. Windsor Federal Savings and Loan Association*, for example, Judge Meyer concluded that the *pro se* plaintiffs' allegations of fraud under RICO needed to "satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b)," and ordered the plaintiffs to show cause why their complaint should not be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B).[149] And in *Mack v. Perpetua et al.*, Judge Spector reviewed a *pro se* plaintiff's complaint after she moved to proceed IFP, and recommended dismissal of her claim of fraud because she had failed to meet Rule 9(b)'s heightened pleading standard.[150] Similarly, in *Bey v. Epstein*, Judge Richardson reviewed a *pro se* plaintiff's complaint after he moved to proceed IFP,

---

147 *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994).

148 *See Lanzaro-Brunstein v. Creative Portal LLC*, No. 25-cv-5905 (NSR), 2026 WL 1708236, at *3 (S.D.N.Y. June 12, 2026) ("Although the Supreme Court has held the pleadings of *pro se* litigants are to be held to less stringent standards than formal pleadings drafted by lawyers, such pleadings are still subject to dismissal under Fed. R. Civ. P. Rule 9(b)."); *Kerames v. Wells Fargo, National Association*, No. 3:22-cv-1361 (VDO), 2024 WL 177382, at *2 (D. Conn. Jan. 17, 2024) ("Although a court must construe a complaint filed *pro se* liberally, that complaint must still comply with the heightened particularity standard where there are fraud claims."); *Rivera v. NCB Management Services, Inc.*, No. 3:23-cv-00221 (MPS), 2023 WL 7553051, at *8 (D. Conn. Nov. 14, 2023) (applying Rule 9(b)'s heightened pleading standard to *pro se* plaintiff's claim at the motion to dismiss stage).

149 *El-Hajj-Bey v. Windsor Federal Savings & Loan Assoc.*, No. 3:20-cv-00898 (JAM), 2020 WL 3799200, at *3 (D. Conn. July 7, 2020). He dismissed the case with prejudice pursuant to Section 1915(e)(2)(B) when the plaintiffs failed to show that their case should not be dismissed. *El-Hajj-Bey v. Windsor Fed. Sav. & Loan Assoc.*, No. 3:20-cv-00898 (JAM), slip op. (D. Conn. July 23, 2020).

150 *Mack v. Perpetua et al.*, No. 3:20-cv-1441 (VAB) (RMS), 2020 WL 13220964, at *4 (D. Conn. Nov. 16, 2020), *report and recommendation approved and adopted*, slip op. (D. Conn. Apr. 7, 2021).

and recommended dismissal of his RICO claim in part because he failed to meet Rule 9(b)'s heightened pleading standard and "identify with particularity the instances of fraud."[151]

Mr. Nehring has failed to satisfy 9(b)'s heightened pleading standard. The alleged predicate acts are the filing of eleven appraisals in the State Case, and he asserts that these appraisals were a "coordinated, deliberate series of fabrications."[152] But his only factual support for these conclusory allegations seems to be that the assessed values and the physical descriptions of the property are not consistent with a different appraisal report from 2006.[153] For example, he notes that the 2006 appraisal said that the gross living area of the house is 5,774 square feet, while all of the other appraisal reports said that it was a little under 4,000 square feet.[154] But he pleads no other facts that, if proven, would explain why this inconsistency supports fraudulent intent – particularly given that the characteristics of the property are consistent with the most recent tax assessment records.[155] He also asserts that all of the appraisers falsely certified that their methodology complied with the Uniform Standards of Professional Appraisal Practice ("USPAP"), when none of the appraisers personally inspected the interior of the property.[156] Even if the USPAP required personal physical inspections,[157] it is unclear why this would support a

---

[151] *Bey v. Epstein*, No. 3:21-cv-901 (KAD) (RAR), 2021 WL 8155603, at *5 (D. Conn. Aug. 6, 2021), *report and recommendation approved and adopted*, slip op. (D. Conn. Aug. 24, 2021).

[152] Amended Complaint, Docket No. 11, at para. 15.

[153] Amended Complaint, Docket No. 11, at pages 6, 10, 15-16, 18-29.

[154] Amended Complaint, Docket No. 11 at page 6. The appraisals from 2014 to 2019 listed the gross living area as 3,982 square feet. *See* Exhibits 1-9 to Amended Complaint, Docket No. 11-1 at pages 4, 18, 32, 45, 64, 75, 92, 105. The 2022 and 2023 appraisals listed the gross living area as 3,917 square feet. *See* Exhibits 10-11 to Amended Complaint, Docket No. 11-1 at pages 118, 132.

[155] The most recent assessor Field Card, available at https://www.propertyrecordcards.com/, from October 2022, stated that the building was 3,917 square feet.

[156] Amended Complaint, Docket No. 11, at pages 10, 16-17, 19-21, 23-28.

[157] The 2024 version does not appear to, and the comments to Rule 1-2 say an appraiser "may use any combination of a property inspection, documents, such as a legal description, address, map reference, copy of a survey or map, property sketch, photographs, or other information to identify

strong inference of fraudulent intent. "[P]laintiffs cannot rest on their say-so that these statements are fraudulent; they must explain why."[158] The factual allegations here do not support a strong inference of fraudulent intent.

Mr. Nehring also alleges that the defendants committed bank fraud. The federal bank fraud statute "criminalizes schemes to defraud, or schemes to obtain the money of, a 'financial institution.'"[159] He asserts, in a conclusory fashion, that the defendants executed a scheme to defraud a financial institution "through the submission of fraudulent appraisals to support loan or collateral valuations and to facilitate collection and foreclosure proceedings."[160] But his Amended Complaint clearly claims that the defendants aimed to defraud *him*, not a financial institution. In fact, he has named U.S. Bank as a defendant, alleging that it participated in a coordinated scheme to manufacture these reports to "defraud Plaintiff of his property rights."[161]

Many of Mr. Nehring's RICO claims are untimely in addition to being factually deficient. RICO claims are subject to a four-year statute of limitations.[162] The statute of limitations "begins to run when the plaintiff discovers – or should reasonably have discovered – the alleged injury."[163] In determining whether a plaintiff should reasonably have discovered the injury, the Second Circuit asks whether "a reasonable [person] of ordinary intelligence would have discovered the

---

the relevant characteristics of the subject property." Uniform Standards of Professional Appraisal Practice at page 19 (Jan. 1, 2024), https://www3.lirealtor.com/docs/default-source/default-document-library/appraisal-resources/uniform-standards-of-professional-appraisal-practice-(uspap).pdf?sfvrsn=5f6c1cde_245 [https://perma.cc/9QSL-TKH4].

158 *Rombach v. Chang*, 355 F.3d 164, 175 (2d Cir. 2004).

159 *United States v. Bouchard*, 828 F.3d 116, 123 (2d Cir. 2016).

160 Amended Complaint, Docket No. 11, at para. 33.

161 Amended Complaint, Docket No. 11, at para. 15.

162 *Koch v. Christie's International PLC*, 699 F.3d 141, 148 (2d Cir. 2012).

163 *McLaughlin v. American Tobacco Co.*, 522 F.3d 215, 233 (2d Cir. 2008).

existence of the fraud."[164] Mr. Nehring alleges injuries from the creation and submission of eleven allegedly fraudulent appraisals. Nine out of those eleven appraisals were created and submitted more than four years before he filed his complaint in this Court.[165] Although Mr. Nehring asserts that he only discovered the allegedly fabricated appraisals in April 2026,[166] his non-conclusory factual allegations provide no reason to suppose that a reasonable person would not have discovered the alleged fabrications at a considerably earlier time.[167] While statute of limitations defenses are ordinarily raised by the defendants after they appear, courts can and do dismiss cases on their own initiative under Section 1915(e)(2) when an IFP plaintiff's complaint reveals that his claims are clearly untimely. "[T]he decision that a complaint is based on an indisputably meritless legal theory, for purposes of dismissal under [Section 1915(e)(2)], may be based on a defense that appears on the face of the complaint."[168] Therefore, these nine claims are time-barred, in addition to being legally insufficient for the reasons outlined above.

For the foregoing reasons, I recommend that Judge Bolden dismiss all of Mr. Nehring's civil RICO claims under 18 U.S.C. §§ 1962(c) & 1962(d).

---

[164] *421-A Tenants Association, Inc. v. 125 Ct. St. LLC*, 760 F. App'x 44, 49 (2d Cir. 2019) (summary order).

[165] The three most recent appraisals were all from defendant Susan Marra, and were from June 2019, November 2022, and June 2023. Exhibits 9, 10, and 11 to Amended Complaint, Docket No. 11-1, at pages 103, 116, 130.

[166] Amended Complaint, Docket No. 11, at para. 13.

[167] *See, e.g. Nino v. Countrywide Home Loans, Inc.*, No. 3:18-cv-2086 (JCH), 2019 WL 1320282, at *3 (D. Conn. Mar. 22, 2019) (concluding that the plaintiff's civil RICO claims based on alleged misrepresentations of market value were time-barred when she "could have conducted an inquiry into the assessed value of the properties she was seeking to purchase at that time, instead of relying on the assessed value provided by the lenders" and "[a]ny manipulation of the loan-to-fair-market-value ratios of each of the properties could and should have been discovered by a reasonably diligent purchaser of ordinary intelligence at the time the mortgages were executed"), *reconsideration denied*, 2019 WL 2357565 (D. Conn. June 4, 2019).

[168] *Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir. 1995).

### 2. *Common-Law Fraud and Civil Conspiracy*

In his third and fourth causes of action, Mr. Nehring asserts claims of common-law fraud and civil conspiracy under Connecticut law. "Under Connecticut tort law, common law fraud constitutes the following: (1) a false representation was made as a statement of fact; (2) it was untrue and known to be untrue by the party making it; (3) it was made to induce the other party to act upon it; and (4) the other party did so act upon that false representation to his injury. The party to whom the false representation was made must claim to have relied on that representation and to have suffered harm as a result of the reliance."[169] A claim for common-law fraud must fulfill the heightened pleading standard of Fed. R. Civ. P. 9(b).[170] Here, Mr. Nehring is alleging that the defendants made knowingly false representations to the Superior Court, to "financial institutions," and to himself.[171] He asserts that the "[c]ourts, financial institutions, and Plaintiff were caused to act in justifiable reliance upon these fraudulent misrepresentations, to Plaintiff's substantial detriment."[172]

In a case "where one party has made fraudulent representations to the court, or caused the court to be misled, it can be said that the party has committed a fraud upon the court."[173] Connecticut law does not recognize a cause of action for monetary damages "arising from a fraud upon the court. . . . Connecticut courts have made it clear that in any action for fraud upon the court a plaintiff's only recourse is to reopen the original case[,] an action which this [federal district] court cannot perform."[174] Therefore, any claim based on fraudulent representations to the

---

169 *Errato v. American Express Co.*, 646 F. Supp. 3d 402, 410 (D. Conn. 2022).

170 *Rothermel v. U.S. Bank National Association as Trustee of Holders of Adjustable-Rate Mortgage Trust 2007-1, Adjustable-Rate Mortgage-Backed Pass-Through Certificates Series 2007-1*, No. 3:23-cv-1329 (SVN), 2025 WL 2098285, at *3-4 (D. Conn. July 25, 2025)

171 Amended Complaint, Docket No. 11, at para. 50.

172 Amended Complaint, Docket No. 11, at para. 51.

173 *Tilley v. Anixter Inc.,* 283 F. Supp. 2d 729, 734 (D. Conn. 2003).

174 *Tilley v. Anixter Inc.*, 283 F. Supp. 2d 729, 735 (D. Conn. 2003).

state court is not legally supported. Mr. Nehring also asserts that there were misrepresentations made to himself and/or to financial institutions, but he does not say what those misrepresentations were, nor the nature of the reliance upon those misrepresentations. Therefore, I recommend that Judge Bolden dismiss Mr. Nehring's claims of common-law fraud, as these claims are either legally or factually unsupported.[175]

Mr. Nehring also asserts a claim of civil conspiracy. But Connecticut law does not recognize an independent action for a claim of civil conspiracy.[176] "[T]o state a cause of action, a claim of civil conspiracy must be joined with an allegation of a substantive tort."[177] Mr. Nehring asserts that the defendants conspired to "defraud [him] of his property rights,"[178] which the Court will interpret as a claim of civil conspiracy to commit fraud. But "[w]here the plaintiff is unable to establish the underlying cause of action for fraud, the cause of action for conspiracy to defraud must also fail."[179] Therefore, I recommend that Judge Bolden also dismiss Mr. Nehring's claim of civil conspiracy.

---

[175] Mr. Nehring's claims are likely also subject to the statute of limitations. In Connecticut, common-law fraud and conspiracy claims are subject to a three-year statute of limitations. *Chisholm v. United of Omaha Life Insurance Co*., 514 F. Supp. 2d 318, 327 (D. Conn. 2007). "Section 52–577 [of the Connecticut General Statutes] is an occurrence statute, meaning that the time period within which a plaintiff must commence an action begins to run at the moment the act or omission complained of occurs." *Estate of Axelrod v. Flannery*, 476 F. Supp. 2d 188, 203 (D. Conn. 2007). Mr. Nehring's claims are based on eleven allegedly false appraisals, involving five different appraisers and five different notaries, spanning a period of nine years. The last appraisal was filed on July 28, 2023, over three years before his first complaint was filed. *See generally* Complaint, Docket No. 1 and Amended Complaint, Docket No. 11. Although he claims that he only "discovered" these appraisals in April 2026, it is unclear how or why that would be the case. The appraisals were posted on the public docket, in a case where he participated vigorously in the litigation.

[176] *Macomber v. Travelers Property & Casualty Corp.*, 277 Conn. 617, 636 (2006).

[177] *Macomber v. Travelers Property & Casualty Corp.*, 277 Conn. 617, 636 (2006).

[178] Amended Complaint, Docket No. 11, at para. 55.

[179] *Tilley v. Anixter Inc.*, 283 F. Supp. 2d 729, 735 (D. Conn. 2003).

### *3. CUTPA*

Finally, Mr. Nehring claims that the law firm defendants (McCalla Raymer Leibert Pierce LLC and Hinshaw & Culbertson LLP) and U.S. Bank violated CUTPA. He asserts, in a conclusory fashion, that the "acts and practices of the U.S. Bank and the law firm Defendants as described herein constitute unfair or deceptive acts or practices in the conduct of trade or commerce within the State of Connecticut."[180]

CUTPA provides that "no person shall engage in unfair methods of competition or deceptive acts or practices in the conduct of any trade or commerce."[181] In order to prevail on a CUTPA claim, a plaintiff must plead that: "(1) the defendant was acting in trade or commerce; (2) that the defendant engaged in unfair or deceptive acts; and (3) that such unfair or deceptive acts cause the plaintiff to suffer an ascertainable loss."[182] "Connecticut courts have held that CUTPA applies to unfair or deceptive conduct by mortgage companies and other holders of mortgage notes."[183]

Mr. Nehring's CUTPA claims are barred by the statute of limitations. Under CUTPA, an action "may not be brought more than three years after the occurrence of a violation."[184] Mr. Nehring claims that the defendants engaged in "deceptive acts" in the State Case when they submitted the allegedly false appraisals, but the last of these was filed on July 28, 2023, over three years before his first complaint was filed.[185] Moreover, Mr. Nehring's non-conclusory factual allegations do not implicate the "continuing violation doctrine," which "provides that when a

---

180 Amended Complaint, Docket No. 11, at para. 60.

181 Conn. Gen. Stat. § 42-110b.

182 *Tanasi v. CitiMortgage, Inc.*, 257 F. Supp. 3d 232, 275 (D. Conn. 2017).

183 *Rodrigues v. J.P. Morgan Chase Bank*, No. 3:08-cv-1417 (PCD), 2009 WL 3710688, at *9 (D. Conn. Nov. 3, 2009).

184 Conn. Gen. Stat. § 42-110g(f).

185 *See generally* Complaint, Docket No. 1 and Amended Complaint, Docket No. 11.

plaintiff experiences a continuous practice and policy that violates his or her rights, the commencement of the statute of limitations period may be delayed until the last violation."[186] Mr. Nehring does not allege any such continuing practice or policy. In addition, he has not alleged facts which suggest that the statute of limitations period should be subject to equitable tolling. "Equitable tolling is appropriate on a rare occasion where extraordinary circumstances prevented a party from timely performing a required act, and the party acted with reasonable diligence throughout the period he sought to toll."[187] Although he claims that he only "discovered" these appraisals in April 2026, the appraisals were posted on the public docket during the state court proceedings, and reasonable diligence would have revealed the conduct that Mr. Nehring cites as allegedly violative of CUTPA.

In addition, Mr. Nehring's claims against the law firms that were involved in the foreclosure action fail to state a claim under CUTPA. "The Connecticut Supreme Court has held that the noncommercial aspects of lawyering – that is, the representation of a client in a legal capacity – should be excluded from liability under the CUTPA for public policy reasons."[188] The law firms' alleged misconduct consists of requesting, preparing, or filing of court documents, all of which was performed as part of their representation of U.S. Bank in the foreclosure proceedings, and "did not consist of entrepreneurial work such as advertising and bill collection. Therefore, the firms are immune from liability under the CUTPA."[189] For the foregoing reasons, I recommend that Judge Bolden dismiss Mr. Nehring's CUTPA claims.

---

186 *Flores v. United States*, 885 F.3d 119, 122 (2d Cir. 2018) (per curiam).

187 *Edwards v. McMillen Capital, LLC*, No. 21-1024-CV, 2022 WL 16984534, at *2 (2d Cir. Nov. 17, 2022) (summary order).

188 *Gabriele v. American Home Mortgage Servicing, Inc.*, 503 F. App'x 89, 96 (2d Cir. 2012) (summary order).

189 *Gabriele v. American Home Mortgage Servicing, Inc.*, 503 F. App'x 89, 96 (2d Cir. 2012) (summary order).

## V. CONCLUSION

In summary, (a) Mr. Nehring's motion for leave to proceed *in forma pauperis* is granted, and (b) I recommend that Judge Bolden dismiss all the claims in Mr. Nehring's Complaint. I further recommend, however, that the dismissal be without prejudice to repleading. If my recommendation is accepted, this would mean that Mr. Nehring could file an amended complaint attempting to cure the defects identified in this recommended ruling. There may be no cure for these defects, but *pro se* plaintiffs are usually permitted at least one try[190] "with the benefit of this statement of the defects in his pleadings."[191]

This is a recommended ruling by a magistrate judge.[192] **<u>If Mr. Nehring wishes to object to my recommendation, he must file that objection with the Clerk of the Court by November 10, 2026</u>**[193] If he fails to file a timely objection, his failure "operates as a waiver of any further judicial review[.]"[194] In particular, failure to file a timely objection operates as a waiver of the right to seek appellate review in the Court of Appeals.[195]

*/s/ Thomas O. Farrish*

Hon. Thomas O. Farrish
United States Magistrate Judge

190 *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

191 *Norman v. Connecticut,* No. 3:25-cv-1885 (SVN) (TOF), 2026 WL 1893470, at *10 (D. Conn. July 1, 2026), *objection docketed*, Docket No. 87 (July 9, 2026).

192 Fed. R. Civ. P. 72(b)(1); D. Conn. L. Civ. R. 72.1(C).

193 *See* Fed. R. Civ. P. 72(b)(2) (stating that objections to magistrate judge recommendations shall be filed within fourteen days).

194 *Small v. Secretary of Health & Human Services*, 892 F.2d 15, 16 (2d Cir. 1989).

195 *Small v. Secretary of Health & Human Services*, 892 F.2d 15, 16 (2d Cir. 1989); *see also* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; Fed. R. Civ. P. 6; *Impala v. U.S. Department of Justice*, 670 F. App'x 32 (2d Cir. 2016) (summary order).